UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-23036-CIV-MORENO
MAGISTRATE JUDGE P. A. WHITE

HARRY A. NAIL,

     Plaintiff,

v.

OFFICER COLLADO, et al.,

     Defendant(s).

_____/

## REPORT OF MAGISTRATE JUDGE RE
## JOINT MOTION FOR SUMMARY JUDGMENT FILED BY
## DEFENDANTS, ESTHER MATHURIN AND CEPHIANNE SMYTHE
## (DE#81)

### I.  Introduction and Background

This Cause is before the Court upon the joint motion to for summary judgment with supporting affidavits and exhibits, filed by the Defendants, Esther Mathurin ("Mathurin") and Cephianne Smythe ("Smythe"), on the basis that they are entitled to judgment as a matter of law; and, in the alternative, that the action is due to be dismissed because the Plaintiff failed to exhaust his administrative remedies. (DE#81). Plaintiff has filed responses thereto (DE#s102,121), and the Defendants a reply (DE#129).

This case has been previously referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. See 28 U.S.C. §636(b)(1)(B), (C); Fed.R.Civ.P. 72(b), S.D.Fla. Local Rule 1(f) governing Magistrate Judges, and S.D. Fla. Admin. Order 2003-19.

Briefly, the procedural background of this case reveals that,

after the Plaintiff was granted pauper status, the initial complaint was screened, in accordance with the Prison Litigation Reform Act ("PLRA"), and a Report entered thereon. (DE#7). The Report was adopted by Order entered on September 15, 2015, which permitted the case to proceed against the named Defendants, in relevant part, on a claim of deliberate indifference, pendent state law negligence claim, and punitive damages. (DE#8). Service was accomplished on all Defendants, and Answers filed. (See DE#s24,29,53,55,62,63). A pretrial scheduling order was entered, setting forth the deadlines for discovery and the filing of dispositive motions. (DE#60).

On May 4, 2016, the Plaintiff, together with the named correctional officers, Defendants, Bruny Pierre, Angela Valentine, Frederick Lester, and Efrain Collado filed a joint notice to voluntarily dismiss the complaint, with prejudice, solely as to those named Defendants. (DE#75). The notice was predicated on an agreement reached between the Plaintiff and the Florida Department of Financial Services' Risk Management Division. (Id.).

The remaining two Defendants, Esther Mathurin ("Mathurin") and Cephianne Smythe ("Smythe"), filed a motion for summary judgment (DE#81) with supporting exhibits (DE#80). An Order was entered on August 10, 2016, requiring the Plaintiff to file a response thereto. (DE#82). When no response was received by the Court, Mathurin and Smythe filed a joint motion to dismiss for lack of prosecution. (DE#87). A Report was entered on September 22, 2016, recommending that the motion to dismiss be granted, and the motion for summary judgment be dismissed, as moot. (DE#89). The Report was adopted by Order entered on October 12, 2016, dismissing the case as to the four named correctional officers, pursuant to the agreement reached between the parties; and, dismissing Defendants

Mathurin and Smythe, for lack of prosecution. (DE#91). Objections, treated as a motion for reconsideration, was denied by Order entered on October 21, 2016. (DE#s92,94). On November 13, 2016, a notice of appeal was filed. (DE#98).

On July 13, 2018, the Eleventh Circuit remanded the case for reconsideration of the plaintiff's response to the summary judgment motion which, while mailed in September 2016, it was, for some unbeknownst reason, not "entered" on the docket, by the Clerk of Court, until January 2017 (See DE#102), despite the Clerk's receipt 2016. Therefore, it was not made part of the record until well after the Report recommending dismissal for non-compliance and this court's order adopting the Report were entered. The appellate court remanded, having determined that the case had been incorrectly dismissed since Plaintiff had, in fact, complied with this court's order. Therefore, the joint motion for summary judgment was ripe for consideration, since Plaintiff had filed a response thereto.

Following the issuance of the mandate (DE#117), the district court re-opened the case, and re-referred the matter to the undersigned for issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. See 28 U.S.C. §636(b)(1)(B), (C), S.D. Fla. Local Rule 1(f) governing Magistrate Judges, and S.D. Fla. Admin. Order 2003-19.

In light of the appellate court's remand and the re-referral to the undersigned, an order was entered advising the parties that the summary judgment motion, together with plaintiff's response thereto, would be reviewed in turn. (DE#118). Plaintiff filed a supplemental response of material misrepresentations to the joint motion for summary judgment. (DE#121). Defendants filed a joint

3

reply thereto. (DE#129).

## II.  <u>Legal Standard of Review</u>

### A.  <u>Motion to Dismiss</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint where the plaintiff has failed to state a claim upon which relief may be granted. <u>See</u> <u>Fed.R.Civ.P.</u> 12(b)(6). In considering a Rule 12(b)(6) motion, the courts read plaintiff's *pro se* allegations liberally, pursuant to <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. <u>Hunnings v. Texaco, Inc.</u>, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the plaintiff does not plead facts that state a claim to relief that is plausible on its face. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007)(retiring the oft-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim); <u>Watts v. FIU</u>, 495 F.3d 1289 (11 Cir. 2007).

In other words, a Rule 12(b)(6) motion tests the legality of a plaintiff's claim, and the court construes all allegations as set forth in plaintiff's complaint as true, and resolves all inferences in favor of the plaintiff. <u>United States v. Gaubert</u>, 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); <u>Powell v. Lennon</u>, 914 F.2d 1459, 1463 (11th Cir. 1990).

"As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996). However, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). Notwithstanding, a plaintiff's claim must be "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (internal citations omitted). However, a plaintiff's allegations require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).

The rules of pleading do "not require heightened fact pleading of specifics...." The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(quoting Twombly, 127 S.Ct. at 1964).

The Court must hold the allegations of a pro se civil rights complaint to a less stringent standard than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519 (1972), and such a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief. Haines v. Kerner, supra; Conley v. Gibson, 355 U.S. 41 (1957).

## B.  <u>Summary Jugdment Standard</u>

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Fed.R.Civ.P.</u> 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Greenberg v. Bell-South Telecomm., Inc.</u>, 498 F.3d 1258, 1263 (11th Cir. 2007)(<i>per curiam</i>); <u>Fed.R.Civ.P.</u> 56(c).

In accordance with <u>Celotex</u> and its progeny,[1] a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion, and identifying those portions of the record, including pleadings, discovery material, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.

In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." <u>Stewart v. Happy Herman's Cheshire Bridge, Inc.</u>, 117 F.3d 1278, 1285 (11th Cir. 1997). Further, all reasonable doubts about the facts must be resolved in favor of the non-movant. <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555, 1558 (11th

---

[1] In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (Citation omitted).

Cir. 1990).

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.), cert. den'd, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). However, this demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). The non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. Celotex, 477 U.S. at 322-23.

Pursuant to 28 U.S.C. §1746, Plaintiff declared under penalty of perjury that his allegations set forth in the operative complaint were true and correct. (DE#1). Because the allegations are based on personal knowledge and executed under the penalty of perjury, the plaintiff's allegations constitute sufficient evidence in support of plaintiff's claims. See Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n.5 (11th Cir. 1992)(holding that the "facts alleged in an inmate's sworn pleading are sufficient" to defeat a motion for summary judgment and "a separate affidavit is not necessary," so long as the allegations are not conclusory in nature); Belfort Lelieve v. Oroso, 846 F.Supp.2d 1294, 1299 n.2 (S.D. Fla. 2012)(citing Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge...."); 28 U.S.C. §1746 (permitting the use of unsworn declarations in lieu of a sworn declaration if subscribed "under penalty of perjury" and dated in substantially the same manner as

provided in the statute). See, e.g., McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir.1987) (considering a pro se prisoner's verified complaint in opposition to motion for summary judgment)). Notwithstanding, Plaintiff has filed a response to the summary judgment motion with supporting affidavit and exhibits. (DE#28).

However, if the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough to defeat a properly supported motion for summary judgment. See Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996); Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 252).

Further, conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)(grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations...."); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Thus, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary

judgment is due to be granted in favor of the moving party. <u>Celotex</u>, 477 U.S. at 322; <u>Barnes v. Southwest Forest Industries, Inc</u>., 814 F.2d 607, 609 (11th Cir. 1987).

For summary judgment purposes, only disputes involving material facts are relevant. <u>United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida</u>, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248; <u>Lofton v. Secretary of the Department of Children and Family Services</u>, 358 F.3d 804, 809 (11th Cir. 2004)("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003)(citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. <u>Celotex</u>, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine

issue as to a requisite material fact); <u>Waddell</u>, 276 F.3d at 1279
(to establish a genuine issue of material fact, the nonmoving party
must produce evidence such that a reasonable trier of fact could
return a verdict in his favor).

At this stage of the case, the evidence and all reasonable
inferences from that evidence are viewed in the light most
favorable to the nonmovant, but those inferences are drawn "only
'to the extent supportable by the record.'" <u>Penley v. Eslinger</u>, 605
.3d 843, 848 (11th Cir. 2010)(<u>quoting</u> <u>Scott v. Harris</u>, 550 U.S. 372,
381 n. 8, 127 S.Ct. 1769, 1776 n.8, 167 L.Ed.2d 686 (2007)).
Although factual inferences must be viewed in a light most
favorable to the nonmoving party, the non-moving party has the
burden of establishing by sufficient evidence a genuine issue of
material fact. <u>Beard v. Banks</u>, 548 U.S. 521, 525 (2006).

### III. <u>Discussion</u>

### A. <u>Failure to Exhaust</u>

Defendants Mathurin and Smythe have filed a joint motion for
summary judgment in which they argue that they are entitled to
summary judgment, as a matter of law, because the Plaintiff failed
to exhaust his administrative remedies prior to filing this civil
rights action. (DE#81).

### 1. <u>Applicable Law Re Exhaustion</u>

The PLRA provides that "[n]o action shall be brought with
respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Section 1997e(a) requires "proper exhaustion of administrative remedies," and a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-93, 165 L.Ed.2d 368 (2006). Thus, exhaustion of all available administrative remedies is a mandatory pre-condition to suit. See Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see also, Porter v. Nussle, 534 U.S. 516, 524-25, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002)("Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); Parzyck v Prison Health Serv., Inc., 627 F.3d 1215, 1217 (11th Cir. 2010).

The Eleventh Circuit has also made clear that the exhaustion defense "is not ordinarily the proper subject for a summary judgment; instead it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" Bryant v. Rich, 530 F.3d 1368, 1375 (11th Cir.2008) (quoting Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir.1988)). As applied here, although raised by Defendants in a joint motion for summary judgment, to the extent the Defendants seek dismissal for lack of exhaustion, it is being treated as a motion to dismiss, pursuant to Rule 12(b)(6), rather than as one brought under Rule 56.

When deciding whether a prisoner has exhausted his remedies,

the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. "If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make "specific findings in order to resolve the disputed factual issues related to exhaustion." Id. (citing Bryant, 530 F.3d at 1373-74, 1376). See also Myles v. Miami-Dade County Correctional and Rehabilitation Dept., 476 Fed.Appx. 364, 366 (11ᵗʰ Circ. 2012).

With this background, and as pertinent to the discussion of exhaustion here, the Florida Administrative Code ("FAC"), lays out the grievance procedures available to a Florida prisoner, confined within the FDOC. See Fla. Admin. Code Ann. §33-103; see also, Chandler v. Crosby, 379 F.3d 1278, 1288 (11 Cir. 2004). In that regard, the FAC requires a Florida prisoner to (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the FDOC Secretary. Chandler v. Crosby, 379 F.3d at 1288 (citing Fla. Admin. Code §33-103.005 to §33-103.007).

Moreover, the FAC also states that "informal grievances must be received within 20 days of when the incident or action being grieved occurred unless the inmate has requested in writing and received approval for a 45 day extension to file an informal grievance..." Fla. Admin. Code. §33-103.011(1)(a). The request for an extension must be submitted on Form DC6-236, Inmate Request, and received within 20 days of the application of restraints. Id. When determining the time frames for grievances, the FAC provides that

the time frame "commences on the day following the date of the incident or response to the grievance at the previous level. Fla. Admin. Code §33-103.011. The informal grievance be submitted to the designated staff by placing it in a locked grievance box, made available to inmates in open population and special housing units. Fla. Admin. Code Ann. §33-103.005(1)(a). Within 10 calendar days of receipt of an informal grievance by the reviewing authority, a written response shall be provided to the filing inmate. See id. at §33-103.011(3)(a).

Furthermore, where an inmate's grievance is denied for failure to timely file, he is barred from bringing a federal action on his claim, as he did not fully and properly exhaust his administrative remedies. Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005). If the informal grievance is denied for other reasons, the prisoner must then file a formal grievance at the institutional level. Id. at 33-103.006. If the issue is not resolved at the institutional level, the inmate must file an appeal to the FDOC Secretary. Id. at 33-103.007; see also, Lyons v. Trinity Services Group, Inc., 401 F.Supp.2d 1290, 1295 (S.D. Fla. 2005). Where the inmate does not agree to an extension of the time in which he will be provided a response to his grievance, "expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process." Id. at §33-103.011(4). Since exhaustion is considered as a matter in abatement and not dealt with on the merits, Defendants are not entitled to dismissal with prejudice.

Consequently, in order to properly exhaust, a pretrial detainee or prisoner must "[c]ompl[y] with prison grievance procedures." Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11 Cir. 2015)(quoting Jones v. Bock, 549 U.S. 199, 218, 127

S.Ct. 910, 922-23, 166 L.Ed.2d 798 (2007)). As the Supreme Court has made clear, "[T]he only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need not exhaust only such administrative remedies as are 'available.'" Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the administrative remedy must first be available, and availability requires that the remedy is "capable of use for the accomplishment of [its] purpose." Turner v. Burnside, 541 F.3d 1077, 1084-85 (11th Cir. 2008) (citation omitted).

Under the PLRA, "available" "means that inmates must exhaust administrative remedies so long as there is the possibility of some kind of relief." Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005)(citing Ross v. County of Bernalillo, 365 F.3d 1181, 1187 (10th Cir. 2004)). The Eleventh Circuit has held that a prison official's conduct, under certain circumstances, might prevent an inmate from pursuing his administrative remedies, thereby rendering them "unavailable" and lifting the exhaustion requirement. See Id. at 1084-1085. In Turner, the Eleventh Circuit concluded, for example, that a prison official's serious threats of substantial retaliation against an inmate for pursuing a grievance in good faith render the inmate's administrative remedy unavailable. Id. at 1085. Without deciding the issue, the Eleventh Circuit recognizes that other courts have also concluded that administrative remedies are unavailable when prison officials do not respond to an inmate's grievances or prevent the filing of grievances. Bryant v. Rich, 530 F.3d 1368, 1373 n.6 (11th Cir. 2008).

In Ross v. Blake, the Supreme Court identified three circumstances or "situations" in which administrative remedies would be considered unavailable. Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). In that regard, the Supreme

Court found:

> three situations in which an administrative remedy is not 'available' under the PLRA. **First,** 'an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. **Second,** 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' Id. **Third,** a remedy is not available 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' Id. at 1860.

Pearson v. Taylor, 665 Fed.Appx. 858, 868 (11 Cir. Dec. 20, 2016)(unpublished) (quoting Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1859-1860, 195 L.Ed.2d 117 (2016)).

The PLRA entirely eliminates judicial discretion and instead mandates strict exhaustion, "irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6, 121 S.Ct. 1819, 1825 n.6, 149 L.Ed.2d 958 (2001). "Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit." See Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005)(quoting Porter v. Nussle, 534 U.S. at 525, 122 S.Ct. at 988)). Further, the Supreme Court has repeatedly reaffirmed that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524).

The Eleventh Circuit has identified seven policy reasons why exhaustion of administrative remedies is mandatory:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own error; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005)(quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998))(internal quotations omitted).

In reviewing the question of exhaustion, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 Fed.Appx. 81, 83 (11 Cir. 2013)(per curiam) (citing Harris v. Garner, 216 F.3d 970, 981 (11 Cir. 2000)(en banc)). As made clear by the Supreme Court in Ross v. Blake, an inmate must exhaust available remedies, but need not exhaust unavailable ones. Ross v. Blake, ___ U.S. at ___, 136 S.Ct. at 1858-59. In that regard, Ross provides that the word "available" means "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Ross v. Blake, ___ U.S. at ____, 136 S.Ct. at 1858-59 (quoting Booth v. Churner, 532 U.S. 731, 737-738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)(quoting Webster's Third New International Dictionary 150 (1993))(further citations omitted).

Applying the standard set forth by the Supreme Court in Ross, the issue before this court is whether the administrative grievance

process was "available" to the Plaintiff. If so, then it needs to be determined whether the Plaintiff availed himself of that process. In that regard, the Supreme Court has instructed courts to consider if an administrative remedy is on the books; and, if so, is it capable of use to obtain relief. Ross v. Blake, ___ U.S. at ____, 136 S.Ct. at 1859. An administrative procedure is unavailable when "it operates as a dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross v. Blake, supra.

## 2. **Defendants' Arguments Re Exhaustion**

According to the Defendants, the Plaintiff never filed an administrative grievance relating to the conduct of the two medical officials, Defendants Mathurin and Smythe. (DE#81:5). Defendants argue that disciplinary records confirm the Plaintiff did, however, properly exhaust his administrative remedies as to the four correctional officers, but not Mathurin and Smythe. (Id.).

Defendants have filed an Affidavit from Alan McManus ("McManus"), Chief of Policy Management and Inmate Affairs for the FDOC, which avers that he has searched the grievance database between July 1, 2012 and December 31, 2013, and could not find any disciplinary reports regarding the claim of deliberate indifference as to the two remaining medical Defendants, Mathurin and Smythe. (DC#80-3). Defendants state that Grievance No. 13-6-037735 complained of the deliberate indifference and negligence of the correctional officers. On appeal thereof, the Defendant claims Plaintiff again complained the correctional officers refused to provide him much needed medical attention, walking past the Plaintiff's cell, and taunting him. (Id.:¶16).

Defendants attach a copy of Grievance No. 13-6-037735, filed
by the Plaintiff on February 28, 2013, which states, as follows:

> This is a grievance in a good faith attempt to exhaust
> all administrative remedies as mentioned on the PLRA. On
> January 8, 2013, I inflicted cuts to my arms and stabbed
> myself with 2 paper clips while on S.H.O.S. status. The
> C.O.'s [correctional officer's] refused to get me medical
> attention and walked past my cell multiple times taunting
> me knowing that I was hurt. Their actions constituted
> crule [sic] and unusual punishment and deliberate
> indifference to my serious medical needs. Had the lit.
> not [noticed] me I may have died due tot he wilfull and
> wanton neglect of those officers. I stand by my statement
> in the attached formal grievance. These actions from
> officers should not be allowed.

(DE#80-3:9).

Also attached is a copy of a February 5, 2012 Request for
Administrative Remedy or Appeal, directed to the Warden, assigned
Grievance No. 1302-463-037, in which Plaintiff states:

> This is a grievance of a sensitive nature therefore no
> informal grievance need be attached. On January 8, 2013
> I cut myself and stabed [sic] two paper clips into my
> abdomen. I told C.O. Collardo (sic) that I needed to see
> medical to which he replied "you did it to yourself." I
> then covered my cell window with the green SHOS blanket.
> C.O. Collardo then tried to snatch the blanket out of my
> cell. He saw that I had cut my arm but still did not
> notify medical or the T.C.U. O.I.C. from that point on.
> I bled in my cell profusely to the point where I filled
> up several cups and threw the blood under the door in an
> attempt to get the attention of staff that would help me
> but to no avail. I stayed in that cell bleeding and in
> pain for at least 3 hours. C.O. Collardo, C.O. Lester,
> and Sgt. Pierre (sic) all walked past my cell and did
> nothing to get me medical attention. The camera from
> Wing 2, J Dorm will show that these officers walked past
> the blood in front of my cell and at times would knock
> and say "oh you ain't dead yet." This is a pure example
> of crule [sic] and unusual punishment and deliberate
> indifference to my serious medical needs. My medical

needs are proven to have been serious due to the fact
that I had to be tr[a]uma flighted to the hospital. The
nature of this grievance is sensitive because the actions
of the officers could have brought about my demise and if
they are found guilty of these allegations they may lose
their jobs so reprisal is not something that is far
[f]etched in this case. This is the first time I have
been allowed pen and paper since my return from the
hospital that's why this was not submitted 15 days after
the incident.

(DE#80-3:11).


A February 15, 2013 Part B-Response to the above grievance
states, in pertinent part, as follows:


Your formal grievance log #1302-463-037 has been reviewed
and evaluated. The Administration has already reported
your concerns as required. No staff will retaliate
against you and staff will be monitored appropriately.

Grievance Log 1302-463-037 Approved

You may appeal and obtain further administrative review
of your of your complaint by acquiring Form DC1-303,
completing the form and forwarding it with all
attachments to the Office of the Inmate Grievance
Administrator, 2601 Blair Stone Road, Tallahassee, FL
32399-2500. If you do appeal, take the form and
attachments to the mailroom for receipting.


(DE#80-3:10).




## 3. **Plaintiff's Response Re Exhaustion**


In his response (DE#102), Plaintiff argues that he filed two
sets of grievances, one against the correctional officers and the
other against the two medical personnel, arising from the January

19

8, 2013 incident. (DE#102:20:¶11). Plaintiff claims that individuals at the institution, who do not wish for a particular grievance to be reviewed, will ensure it does not get to the proper reviewing authority. (DE#102:4). Plaintiff alleges he did, in fact, file an administrative grievance at the institutional level and then with the central office, but states he was unaware of what happened to those grievances. (Id.:4:¶13). According to the Plaintiff, he filed an informal grievance concerning the medical personnel's actions, and after no response thereto was received, he states he then filed a formal appeal with the Central Office on February 28, 2013. (Id.:¶14). Plaintiff alleges that officials at Dade CI failed to respond or even log Plaintiff's grievances against Defendants Mathurin and Smythe. (Id.:5:¶15). Plaintiff states that after he filed his grievance against Mathurin and Smythe, when no response were received he then filed an appeal at the next level. (Id.:¶12). Plaintiff suggests that the employees at Dade CI purposefully lost his grievances, thereby frustrating his ability to property exhaust his administrative remedies as to the two named medical personnel. (Id.). Plaintiff, however, provides no copies of the grievances he purportedly filed against Mathurin and Smythe, and the documents provided by Defendants prove otherwise.

### 4. <u>Defendants' Reply Re Exhaustion</u>

Defendants state that it is implausible that the Plaintiff was able to effective exhaust his administrative remedies as to the four correctional officers, and not exhaust as to the two named medical personnel, Mathurin and Smythe. (DE#129:3). Even when considering the Plaintiff's explanation as true, that Dade CI knowingly frustrated his efforts to exhaust as to the two named medical personnel, Plaintiff has come forward with no evidence to

support his allegation that he did file the grievances, but were lost by Dade CI personnel.

### 5. <u>Discussion</u>

As detailed above, it appears from careful review of the record, together with the grievances and responses thereto provided by the Defendants, that the Plaintiff did properly exhaust his administrative grievances as to the four named correctional officers, but never filed any grievance as to the two medical personnel, Mathurin and Smythe. Plaintiff has not provided any proof, such as his copy of the grievance filed, to support his allegation. Further, it is clear he did, in fact, grieve the January 8, 2013 incident as to the officers, but not as to the medical personnel. Nothing in the grievances which were provided by the Defendants here reveal that they put the Dade CI or the FDOC on notice of the incident as it relates to Mathurin and Smythe.

It is uncontroverted that the Plaintiff is a prisoner in the FDOC, which has a process in place, as narrated previously, for filing administrative grievances. When a defendant seeks dismissal of a §1983 prison-conditions claim based on procedural default, the district court must first examine "the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." <u>See</u> <u>Turner</u>, 541 F.3d at 1082. If the allegations, viewed in that light, show that the plaintiff procedurally defaulted his claim, the court must dismiss the claim. <u>See</u> <u>Id</u>. However, where as here, there are disputed factual issues, the court must allow the parties to develop the record, and the court must "make specific findings" and "decide[] whether under those findings the prisoner has" procedurally defaulted. <u>See</u> <u>Id</u>. at

1082-83; <u>Bryant v. Rich</u>, 530 F.3d 1368, 1376 (11 Cir. 2008).

The Defendants have filed exhibits and an Affidavit from McManus, the FDOC records custodian charged with cataloging all formal grievances and grievance appeals for the FDOC, including those filed directly with the Office of the Secretary. (DE#80-3:¶¶4-5). Although <u>Fla.Admin.Code</u>. 33-103 provides that an informal grievance be filed with the institutional staff member, it can be bypassed, and filed formally if it, in part, is of an emergency nature or medical in nature. (<u>Id</u>.:¶9). These formal grievances, however, must be filed on a DC1-303 form, with the institution's Warden. (<u>Id</u>.:¶10). These institutional grievances are then logged by the grievance coordinator, who then gives Plaintiff a receipt confirming this fact. (<u>Id</u>.:¶11). The grievance is then forwarded to the Bureau of Policy Management and Inmate Appeals. (<u>Id</u>.:¶11). Emergency grievances can also be direct filed with the Office of the Secretary. (<u>Id</u>.:¶13). If, however, the formal grievance is medical in nature, then it needs to be addressed first to the Chief Health Officer or that person's designee. (<u>Id</u>.:¶15).

McManus' affidavit confirms that there were only two grievances, nos. 13-6-07735 and 1302-463-037, filed by the Plaintiff, arising from the January 8, 2013 incident. (<u>Id</u>.:¶16). None, however, as argued correctly by the Defendants makes any mention as to the medical personnel's deliberate indifference, and only identified the four correctional officers named in this suit. The Plaintiff argues, however, that he filed a separate grievance as to the medical personnel, Mathurin and Smythe. Plaintiff states, however, he does not know what happened to these grievances, but suggests that Dade CI personnel knowingly misplaced them. Plaintiff, however, provides no copies of these purported grievances, despite being given an opportunity to do so. Even when

viewing the evidence in the light most favorable to the Plaintiff, as the nonmoving party, it is not plausible that Plaintiff was able to grieve the incident as to the four named corrections officials, but did not include the medical personnel in that grievance, or provide proof that he filed a separate grievance as to Mathurin and Smythe.

## 6. <u>Conclusion</u>

Thus, when viewing the allegations of the Defendants in the light most favorable to the Plaintiff, as the non-moving party, the court finds that Plaintiff did not, in fact, exhaust his administrative remedies insofar as it relates to his grievances as to Defendants Mathurin and Smythe. He did exhaust his administrative remedies as to the correctional officers, but nowhere mentioned he was also including a claim as to the medical personnel, Mathurin and Smythe. Therefore, his claim as to these two Defendants was not properly exhausted. Plaintiff cannot excuse his failure to exhaust his grievances since he was able to successfully grieve as to the named correctional officers. Nothing in the properly exhausted grievances made mention of Defendants Mathurin or Smythe. Exhaustion of administrative remedies requires that inmates first present their issue at the local level, in order to enable the facility to redress or correct the problem.

Thus, contrary to the Plaintiff's representations herein, given the McManus declaration, together with the copies of all grievances and appeals filed by the Plaintiff, confirm that Plaintiff has not exhausted his administrative remedies insofar as it relates to the events and Mathurin and Smythe's involvement. This is fatal to this action, as exhaustion of administrative remedies must be accomplished <u>prior to</u> institution of a <u>Bivens</u>

action. See 42 U.S.C. §1997e; Porter v. Nussle, 534 U.S. at 532.

On the other hand, the Defendants have provided clear and convincing proof that the Plaintiff failed to comply with FDOC administrative procedures regarding the filing of grievances and appeals therefrom as it relates to the allegations of the Complaint pertaining to events occurring at Dade CI on January 8, 2013. Plaintiff has further failed to demonstrate that he was precluded from properly pursuing his administrative grievances as to Defendants Mathurin and Smythe. His declaration that he did grieve as to them is implausible and unsupported by the record. Therefore, the motion to dismiss, as to Defendants Mathurin and Smythe, for lack of exhaustion should be GRANTED, and the Complaint DISMISSED.

## B. **Deliberate Indifference Claim**

In the event the district court disagrees, finding that exhaustion was not required on the facts of this record, the remaining arguments by the Defendants regarding Plaintiff's deliberate indifference claim and medical negligence claim follows. Next, Defendants argue that they are entitled to summary judgment, as a matter of law, because the Plaintiff has not shown that the Defendants were deliberately indifferent. (DE#34:14). Warden Maye also argues that Plaintiff has not demonstrated supervisory liability and failure to train.

### 1. **Relevant Law**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Estate of Owens v. GEO Group, Inc., 660 Fed.Appx. 763, 766-68 (11th Cir. 2016) (quoting Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22

(1993). "The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." Estate of Owens v. GEO Group, Inc., 660 Fed.Appx. at 766-68 (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (alterations and quotations omitted). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Estate of Owens v. GEO Group, Inc., supra (quoting Farmer v. Brennan, 511 U.S. at 833, 114 S.Ct. 1970 (citation omitted)).

In that regard, the Eleventh Circuit reiterated that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. (quotation and alteration omitted). The Eleventh Circuit recognized, however, that not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." Estate of Owens v. GEO Group, Inc., supra (quoting Farmer v. Brennan, 511 U.S. at 834, 114 S.Ct. 1970; Purcell v. Toombs County, 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety." (quotation omitted))).

In other words, "[A] prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Id. (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d at 1099 (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)) (quotation and emphasis omitted)). Therefore, to prevail on a failure to keep safe claim, the Eleventh Circuit requires the Plaintiff to prove: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the

25

defendants' conduct and the Eighth Amendment violation." Id. (quoting Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015)).

The determination of a substantial risk of serious harm is measured against an objective standard. Id (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d at 1099. The alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." Id. (quoting Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010)). In that regard, "there must be a 'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." Id. (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotations omitted)). The risk of harm has to be actual, it cannot be potential or speculative. Id. (quoting Carter v. Galloway, 352 F.3d at 1349-50). Mere exposure to the potential for a fight is not enough. Id. (quoting Purcell v. Toombs County, 400 F.3d at 1323 ("In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail.").

For a prison official to be constitutionally liable for failure to protect the safety of an inmate, two requirements must be met. First, the deprivation alleged must be, objectively, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991); Hudson v. McMillian, 503 U.S. 1 (1992). Thus, for a claim based on an alleged failure to prevent harm, an inmate must show that he is or was incarcerated under conditions that pose a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he protection [an inmate] is afforded against other inmates" is a "condition of confinement" subject to scrutiny under the Eighth Amendment. Wilson, supra, 501 U.S. at 303. Second, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind," Farmer v. Brennan, supra, 511 U.S. at 834. In cases predicated on prison conditions, that state of mind is one of "deliberate indifference" to the inmate's health or safety. Wilson v. Seiter, supra, 501 U.S. at 302-03; Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Traditionally, applicable authorities have described "deliberate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, Davidson v. Cannon, 474 U.S. 344 (1976); Estelle, supra, 429 U.S. at 104; Parker v. Williams, 862 F.2d 1471 (11 Cir. 1989), and as something more than a lack of ordinary due care for a prisoner's safety. Whitley v. Albers, 475 U.S. 312 (1986).

Thus, in order to state a claim of cruel and unusual punishment, the courts have required that a prisoner must allege a conscious or callous indifference to his rights by prison officials. Davidson v. Cannon, supra; Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988); Williams v. Bennett, 689 F.2d 1370, 1380 (11 Cir. 1982). Only such a degree of disregard for the prisoner's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which is not.

When the plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under Section 1983. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle v. Gamble, supra, 429 U.S. at 106; Byrd v. Clark, 783 F.2d 1002, 1006 (11 Cir. 1986); Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11 Cir. 1985); Williams v. Bennett, supra 689 F.2d at 1380. The Supreme Court has emphasized that Eighth Amendment liability requires a showing that the responsible official was subjectively conscious of risk to the inmate:

> We hold...that a prison official cannot be liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he

must also draw the inference.

<u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 837; <u>see also</u>, <u>LaMarca v. Turner</u>, 995 F.2d 1535, 1536 (11 Cir. 1993).

There must be an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. <u>See</u> <u>Zatler v. Wainwright</u>, <u>supra</u>, 802 F.2d at 401. <u>See also</u> <u>LaMarca v. Turner</u>, <u>supra</u>, 995 F.2d at 1536. "Personal participation...is only one of several ways to establish the requisite causal connection," <u>Zatler v. Wainwright</u>, <u>supra</u> at 401, and thus, personal participation is not the <u>sine</u> <u>qua</u> <u>non</u> for the defendants to be found personally liable. <u>Swint v. City of Wadley, Ala.</u>, 5 F.3d 1435, 1446 (11 Cir. 1993), <u>opinion modified on other grounds</u>, 11 F.3d 1030 (11 Cir. 1994). The defendant prison official must, however, ignore a substantial risk of serious harm to the inmate. <u>Wilson v. Seiter</u>, and <u>Estelle v. Gamble</u>, <u>supra</u>.

## 2. <u>Undisputed Facts</u>

On January 8, 2013, Plaintiff, a convicted felon, was housed at Dade CI. (DE#80,102). During the evening hours of January 8th, 2013, the Plaintiff self-injured, swallowing paperclips and stabbing himself in the abdomen three times, with one paperclip protruding from that area. (DE#80-1:¶16; DE#80-2:¶12).

## 3. <u>Disputed Facts</u>[2]

The parties, however, dispute most of the ensuing facts

---

[2]There may be additional facts in dispute not recited herein, but the undersigned finds that those facts are not material to the outcome of the instant motion for summary judgment and need not be included in that, for summary judgment purposes, only disputes involving material facts are relevant.

pertaining to the events of that day and their involvement or lack thereof. Specifically, Mathurin argues that on January 8, 2013, she worked the 3:00 p.m. to 11:00 p.m. shift at Dade CI, J-Dorm. (DE#80-31:¶19). Mathurin admits that he is required to perform routine rounds every two hours, accompanied by an officer. (Id.:¶19). Around 10:00 p.m., Mathurin does not dispute that she observed "red fluid" coming from underneath the Plaintiff's cell door. (Id.). She claims to have asked Plaintiff to exit his cell, but Plaintiff refused. (Id.). She denies laughing or mocking Plaintiff. (Id.). Mathurin explains she noted that she observed "red fluid" rather than blood, because inmates often mix blood with water, but without an exam, she could not ascertain the extent of Plaintiff's bleeding. (Id.:¶20). Mathurin denies having the authority or ability to open the Plaintiff's cell, and states she notified the sergeant or lieutenant on duty, whom she claims are the only ones authorized to open and extract Plaintiff from his cell. (Id.:¶¶20-22). According to Mathurin, those individuals are the ones who decide the time and manner of extracting an inmate from their cell, and did not believe that medical personnel can override their decision. (Id.:¶22). By the end of her shift, Mathurin claims the Plaintiff still had not been extracted from his cell, and noted the incident occurred around 9:40 p.m. (Id.:¶23). Mathurin also alleges that there were no medical records generated on January 8th, 2013, confirming signs or symptoms indicating Plaintiff suffered substantial blood loss. (Id.:¶24).

Defendant Smythe has filed an Affidavit claiming that she too was on the 3:00 p.m. to 11:00 p.m. shift on January 8, 2013, but claims Mathurin did rounds while Smythe prepared for the next day's appointments. (Id.:¶13). She corroborate's Mathurin's representations that medical personnel are not permitted to open cell doors pr enter a cell to treat an inmate. (Id.:¶14). She too

claims that security is responsible for the time and manner of an inmate's extraction from his cell, and avers that Mathurin followed protocol, notifying security of the situation. (Id.:¶¶14-15).

Jointly, the Defendants argue that the Plaintiff has not established a deliberate indifference, having failed to meet the first two prongs requiring proof of an objectively serious injury, and that the Defendants knowingly disregarded the injury by conduct that was more than gross negligence. Defendants argue that Plaintiff's injury was, at best, *de minimus*, therefore Plaintiff has not shown a violation of the Eighth Amendment predicated on deliberate indifference. Further, Defendants argue that, as a result of the self-inflicted injuries on January 8th, 2013, contrary to the Plaintiff's allegations, he was not sent to any hospital that day. (DE#81:11).

On the other hand, while Plaintiff argues that, following the January 8, 2013 incident, he was transferred by helicopter to Kendall Regional Medical Center, where he remained hospitalized for about seven days. (DE#102). In support thereof, he has attached excerpts from the hospital records, including relevant Kendall Regional Medical Center records, which reveal that Plaintiff arrived at the hospital, by helicopter, at around 6:13 a.m., on January 9, 2013, after suffering from self-inflicted stab wounds to the abdomen with metal objects. (DE#102:14-History & Physical). He was seen by Dr. Mark I. Cockburn, who notes that Plaintiff was taken to the operating room "emergently for exploratory laparotomy and for possible repair of all injuries that could be found." (DE#102:14). Dr. Cockburn further noted that they would attempt to remove foreign bodies at that time. (Id.).

In his own Affidavit, Plaintiff states that he self-inflicted

wounds to abdomen and forearm, filling a styrofoam cup with blood and throwing it under his cell door in order to garner the attention of institutional personnel. He alleges Mathurin walked past Plaintiff's cell and said the injuries were "impressive," clapping her hands and laughing at the blood on the cell floor and walls. (DE#102:19-23:¶9). He also alleged Smythe saw him bleeding and brushed Plaintiff off with a hand gesture, doing nothing to assist or address Plaintiff's medical condition. (Id.:20:¶6).

## 4. **Discussion**

Defendants argue they are entitled to summary judgment as a matter of law, because there is no evidence that the Plaintiff suffered an objectively serious medical injury and that the Defendants were aware of that injury and failed to do anything about it. However, at this juncture, there is a genuine issue of material fact as to this precise issue. Plaintiff does not dispute that there may be policies in place at Dade CI as to the manner and method of extracting an inmate from a cell so that he can be examined by personnel. However, Plaintiff argues that the two medical Defendants did nothing to ensure that the officials required to do so, did so in a timely manner. He argues that, contrary to the Defendants' representations, they did nothing, and in fact, when their shift ended and the inmate had still not been extracted from his cell, they went home without ensuring the nature and extent of Plaintiff's injuries.

The Eleventh Circuit has made clear as far back as in 1984 that prison officials have an obligation to take action or to inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care. See Waldrop v. Evans, 871 F.2d 1030, 1036 (11th Cir. 1989) (citing Estelle v.

Gamble, 429 U.S. at 104-05, 97 S.Ct. at 291). Further, "Courts have
held that failure to notify competent officials of an inmate's
dangerous psychiatric state can constitute deliberate
indifference." Waldrop v. Evans, supra, (citing Colburn v. Upper
Darby Township, 838 F.2d 663, 667-68 (3rd Cir.1988); Partridge v.
Two Unknown Police Officers of Houston, 791 F.2d 1182, 1186-87 (5th
Cir. 1986)).

Here, there remains a genuine issue of fact regarding whether
or not the two Defendants, Mathurin and Smythe, took any action to
examine the Plaintiff, or ensure that he was extracted from his
cell expeditiously in order to evaluate the amount of loss blood
and the extent of Plaintiff's self-inflicted injuries. Whether a
reasonable medical professional, in the position of Mathurin and
Smythe, would have realized they had a duty to take some action in
response to the Plaintiff's psychiatric problems on that date and
the resulting self-inflicted injuries sustained after Plaintiff
lacerated himself is in dispute. Thus, there remains a disputed
issue of material fact about whether these two Defendant's failure
to notify or otherwise follow-up with a supervisor or other
superior when they realized that almost two hours had elapsed from
the time of the incident and they left home, after their shift
change, constitutes constitutes deliberate indifference to
Plaintiff's psychiatric and medical needs.

To the extent the Defendants argue that the injuries sustained
were "insignificant," this claim is clearly refuted by Plaintiff's
record excerpts which confirm that Plaintiff was, in fact, air-
lifted to Kendall Regional Medical Center, where he remained
hospitalized for several days following the January 8, 2013 self-
inflicted injuries. Defendants' argument to the contrary, claiming
Plaintiff was never sent to the hospital, by helicopter or other

means, "on that or any other date," is clearly refuted by the record. Moreover, given the evidence provided, when viewed in the light most favorable to the non-movant, there remains a genuine issue of fact regarding the seriousness of the injuries sustained. It is clear that the Plaintiff was transported by helicopter and hospitalized, requiring exploratory operation to remove foreign objects and repair lacerations to his body. The injuries, as described by the hospital records, were far from insignificant or, as suggested by the Defendants, *de minimus*. On the record here, the Plaintiff has clearly established a deliberate indifference claim as to these two named Defendants so that summary judgment in their favor should be DENIED.

When considering the facts in the light most favorable to the Plaintiff, as the nonmoving party, there remains a genuine issue as to whether these two medical personnel, Mathurin and Smythe, were following FDOC guidelines regarding extraction of inmates, or whether they were being deliberating indifferent and failing to address the Plaintiff's medical needs and ensure the safety of the Plaintiff. Plaintiff has demonstrated,[3] and the Defendants have not rebutted, that his self-inflicted injuries required immediate transfer to the hospital, which was done within hours of the reported self-inflicted injuries, but after the two named

_____

[3]Pursuant to 28 U.S.C. §1746, Plaintiff declared under penalty of perjury that his allegations set forth in the operative complaint were true and correct. Because the allegations are based on personal knowledge and executed under the penalty of perjury, the plaintiff's allegations constitute sufficient evidence to support plaintiff's claims. See Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n.5 (11th Cir. 1992)(holding that the "facts alleged in an inmate's sworn pleading are sufficient" to defeat a motion for summary judgment and "a separate affidavit is not necessary," so long as the allegations are not conclusory in nature); Belfort Lelieve v. Oroso, 846 F.Supp.2d 1294, 1299 n.2 (S.D. Fla. 2012).

Defendants' work shifts had ended. As noted previously, prison officials have a duty under the Eighth Amendment to "provide humane conditions of confinement" by ensuring "that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994)(quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)); Helling v. McKinney, 509 U.S. 25, 31-32 (1993). It was not done here.

### C. Medical Malpractice/Negligence Claim

The Defendants argue they are entitled to summary judgment as a matter of law as to Plaintiff's related pendent state law medical malpractice or negligence claim, because the Plaintiff has not complied with Florida's presuit requirements. (DE#81). To proceed on a state pendent medical malpractice claim under Florida law requires the plaintiff to satisfy certain requirements prior to the filing of a medical negligence claim.

Florida Statute § 766.106(1)(a) defines a claim for "medical negligence" or "medical malpractice" as "a claim arising out of the rendering of, **or the failure to render**, medical care or services." J.B. v. Sacred Heart Hosp., 635 So.2d 945, 948-49 (Fla. 1994) (emphasis added). In order to qualify as a medical malpractice claim, the wrongful act alleged "must be directly related to the improper application of medical services and the use of professional judgment or skill." Quintanilla v. Coral Gables Hosp., Inc., 941 So.2d 468, 469 (Fla. 3d DCA 2006) (citing Lynn v. Mount Sinai Med. Ctr., Inc., 692 So.2d 1002, 1003 (Fla. 3d DCA 1997)). In addition, any alleged injury "must be a direct result of receiving medical care or treatment by the healthcare provider." Id. (citing Goldman v. Halifax Med. Ctr., Inc., 662 So.2d 367, 371 (Fla. 5th

DCA 1995)).

A plaintiff must follow the presuit screening requirements of Florida Statutes chapter 766 in order to rely on the medical negligence standard of care in proving his or her case. <u>Fassy v. Crowley</u>, 884 So.2d 359, 364 (Fla. 2d DCA 2004). "The statute was intended to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding." <u>Kukral v. Mekras</u>, 679 So.2d 278 (Fla. 1996).

As noted previously, under Florida law, before filing a malpractice claim, a plaintiff must conduct an investigation to determine if reasonable grounds exist to proceed with a medical malpractice claim. <u>See</u> <u>Fla.Stat</u>. §766.203. In that regard, in order to comply with the pre-suit investigation, the Plaintiff is required to obtain a verified medical expert opinion. <u>See</u> <u>Fla.Stat</u>. §766.203(2). After conducting the investigation and prior to commencing litigation, the claimant must provide each defendant notice of his intent to sue by certified mail, return requested. <u>See</u> <u>Fla.Stat</u>. §766.106(2)(a).

The notification "must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, copies of all of the medical records relied upon by the expert in signing the affidavit, and the executed authorization form provided in accordance with <u>Fla.Stat</u>. §766.1065.

Further, Florida's pre-suit requirements are "not jurisdictional, but rather are conditions precedent to the bringing of a medical malpractice action." Clark v. Sarasota County Public Hosp. Bd., 65 F.Supp.2d 1308 (M.D. 1998), aff'd, 190 F.3d 541 (11 Cir. 1999). If a court finds a plaintiff has not complied with pre-suit procedures prior to filing his complaint, Fla.Stat. §766.206(2) directs the court to dismiss the action. Id. at 1310. However, a plaintiff is not barred from asserting an ordinary negligence claim as long as he or she does not rely on the medical negligence standard of care. Feifer v. Galen of Fla., Inc., 685 So.2d 882, 885 (Fla. 2d DCA 1996).

As applied here, federal courts have also made clear that compliance with Florida's Medical Negligence Act to pendent state law claims raised in federal court is required. See McMahan v. Toto, 256 F.3d 1120 (11 Cir. 2001); Woods v. Holy Cross Hosp., 591 F.2d 1164 (5 Cir. 1979); Clark v. Sarasota County Public Hosp. Bd., 65 F.Supp.2d 1308, 1314 (M.D. Fla. 1998).

The decision to provide medical care and medication to a patient requires the exercise of medical judgment and skill. As such, a claim for negligence in failing to provide medical care and medication requires applying the standard of care for medical negligence. See Bailey v. Prison Health Services, Inc., 2007 WL 3348268 (M.D.Fla. Nov. 9, 2007) (Plaintiff's claim against defendant prison health care provider for failing to provide her with prescribed medications while incarcerated was subject to the medical negligence presuit requirements, because it directly related to medical and mental diagnosis, treatment, and care by a healthcare provider and required the application of the prevailing professional standard of care for a healthcare provider); Turner v. Foss, 655 So.2d 1151, 1152 (Fla. 5th DCA 1995) (Personal

Representative's claim against defendant doctor for refusing to render medical care or service to deceased patient by failing to refer patient to a specialist or admit him to a hospital was a claim for medical negligence and subject to presuit notice and screening requirements).

Because the Plaintiff asserts a pendent state law claim, alleging Mathurin and Smythe failed to treat a serious medical condition, he is required to follow the presuit requirements of Florida Chapter 766. These requirements must be met before maintaining a suit for medical negligence. Univ. of Miami v. Wilson, 948 So.2d 774, 776 (Fla. 3d DCA 2006). Here, even when cast as a claim for simple negligence, Plaintiff still does not allege he complied with the presuit requirements of chapter 766 for filing a medical negligence claim. Therefore, summary judgment should be granted to Defendants. See Hosp. Corp. of Am. v. Lindberg, 571 So.2d 446, 449 (Fla. 1990) (in order to assert a medical negligence claim, a plaintiff must allege that he complied with Florida's presuit requirements).

Defendants have argued that Plaintiff has not complied with Florida's presuit requirements. (DE#81:13). Plaintiff has not rebutted this showing. The events here occurred on January 8th, 2013, and suit was instituted here in August 2015. To date, Plaintiff has not provided notice or an affidavit from a medical expert showing compliance with Florida's medical presuit requirements. Consequently, the Defendants are entitled to summary judgment as a matter of law on Plaintiff's pendent state law claim.

### IV. <u>Conclusion</u>

It is therefore recommended that the Defendant's joint motion

for summary judgment (DE#80), construed as a motion to dismiss for lack of exhaustion of administrative remedies be GRANTED. If, however, the district court concludes that dismissal for lack of exhaustion is not warranted, then it is recommended that the motion for summary judgment (DE#80) be DENIED as to the Plaintiff's deliberate indifference claim, but GRANTED as to the pendent state law claim of medical practice or negligence; and, this case be set for trial.

Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. §636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).

Signed this 26th day of December, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Harry A. Nail, Pro Se
     DC#W03328
     Madison Correctional Institution
     Inmate Mail/Parcels
     382 SW MCI Way
     Madison, FL 32340

     Ely Anthony Gonzalez, Ass't Atty Gen'l
     Attorney for Defendants Lester, Valentine & Pierre
     Office of the Attorney General
     Civil Litigation Division

110 Southeast 6th Street 10th Floor
Fort Lauderdale, FL 33301
Email: ely.gonzalez@myfloridalegal.com

Gregg Alan Toomey, Esquire
Attorney for Defendants Smythe and Mathurin
The Toomey Law Firm LLC
1625 Hendry Street, Suite 203
Fort Myers, FL 33901
Email: gat@thetoomeylawfirm.com