UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 15-23036-CIV-MORENO

HARRY A. NAIL,

        Plaintiff,

vs.

OFFICER COLLADO, CORRECTIONAL
OFFICER LESTER, CORRECTIONAL
OFFICER VALINTINE, SARGEANT
PEIERE, NURSE SMYTHE, and ARNP E.
MATHURIN,

        Defendants.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
ORDER DISMISSING WITHOUT PREJUDICE CLAIMS
AGAINST DEFENDANTS MATHURIN AND SMYTHE**

Plaintiff Harry A. Nail commenced this lawsuit on August 13, 2015 alleging Defendants Esther Mathurin and Cephianne Smythe were deliberately indifferent to Plaintiff's serious medical needs by ignoring Plaintiff's self-inflicted arm lacerations instead of providing medical assistance, in violation of his constitutional rights.

The matter was referred to the Honorable Patrick A. White, United States Magistrate Judge, for a Report and Recommendation on Defendants' Motion for Summary Judgment **(D.E. 81)**, filed on **August 9, 2016**, and Plaintiff's Response to Defendants' Summary Judgment Motion **(D.E. 102)**, filed on **September 13, 2016**. The Magistrate Judge filed a Report and Recommendation **(D.E. 137)** on **December 26, 2018**. The Court has reviewed the entire file and made a *de novo* review of the issues presented by Plaintiff's objections to the Report and Recommendation. Being otherwise fully advised in the premises, it is

ADJUDGED that the Magistrate Judge's Report and Recommendation is **AFFIRMED** and **ADOPTED**. The Court agrees with the Magistrate Judge that Plaintiff failed to exhaust his administrative remedies and therefore the Complaint must be dismissed. The Court writes separately to address Plaintiff's objections to the Report and Recommendation.[1]

## I. STANDARD OF REVIEW

When reviewing a magistrate judge's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

## II. LEGAL STANDARD

Defendants raise a failure to exhaust administrative remedies defense in their motion for summary judgment. But an exhaustion defense "is not ordinarily the proper subject for a summary judgment; instead it should be raised in a motion to dismiss, or be treated as such if . . . raised in a motion for summary judgment." *Wright v. Langford*, 562 F. App'x 769, 775 (11th Cir. 2014) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008)). In the Eleventh Circuit, district courts must "decid[e] a motion to dismiss for failure to exhaust administrative remedies [by following] a two-step process." *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). In the first step, the Court must look "to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." *Id.* "If, in that

---

[1] On a procedural history note, the Court adopted the Magistrate Judge's first Report and Recommendation and dismissed the Complaint on October 12, 2016, after Plaintiff failed to timely respond to Defendants' Motion for Summary Judgment. (*See* D.E. 91.) Plaintiff did, however, timely respond because Graceville Correctional Facility received his opposition to summary judgment on September 2, 2016, but, due to an apparent clerical error, Plaintiff's response was not entered on the docket until January 6, 2017. (*See* D.E. 102.) As such, on appeal, the Eleventh Circuit vacated the Court's order of dismissal and remanded the case for further proceedings on the grounds that Plaintiff timely responded under the "prison mailbox rule." (D.E. 117 at 5.)

2

light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. *Id.* (citing *Bryant*, 530 F.3d at 1374; *Lawrence*, 919 F.2d at 1529). But, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds [to the second step] to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

As always, the Court reads Plaintiff's *pro se* allegations liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). And ultimately, Defendants "bear the burden of proving that the [P]laintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082 (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

## III. DISCUSSION

The Magistrate Judge found Plaintiff failed to exhaust his administrative remedies before commencing this lawsuit, as required by the Prison Litigation Reform Act. Consequently, the Magistrate Judge recommends the Court dismiss the Complaint without prejudice. Plaintiff objects that the Magistrate Judge made three errors: (1) refusing to accept Plaintiff's affidavit as true; (2) concluding it was "not plausible" that Plaintiff filed a formal grievance concerning Defendants; and (3) finding lack of exhaustion in part because Plaintiff "provide[d] no copies of the[] purported grievances, despite being given an opportunity to do so" (D.E. 137 at 22). For the following reasons, Plaintiff's objections are OVERRULED.

The Prison Litigation Reform Act requires that Plaintiff exhaust available administrative remedies before commencing a lawsuit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly

enough, regardless of the relief offered through administrative procedures.") (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required")). Plaintiff cannot satisfy Section 1997e(a)'s exhaustion requirement if he files an untimely or otherwise procedurally defective administrative grievance or appeal. *See Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006). Moreover, the Prison Litigation Reform Act eliminates judicial discretion and instead mandates strict exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." *Booth*, 532 U.S. at 739, 741 n.6. This is because Congress intended to give "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Upon this statutory framework, the Court addresses Plaintiff's objections in turn.

*First*, Plaintiff objects that his affidavit "must be taken by law as true." (D.E. 141 at 1.) It is generally true that district courts must take allegations as true at the dismissal stage. But, as Plaintiff is aware,[2] in the context of an exhaustion of remedies defense under the Prison Litigation Reform Act, binding Eleventh Circuit precedent requires the Court to "decid[e] a motion to dismiss for failure to exhaust administrative remedies [by following] a two-step process." *See Turner*, 541 F.3d at 1082 (citing *Lawrence*, 919 F.2d at 1528–29). In the first step, the Court must look "to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." *Id.* "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing *Bryant*, 530 F.3d at 1374; *Lawrence*, 919 F.2d at 1529). But, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed

---

[2] Plaintiff recites *Turner* test step one in his Response to Defendants' Summary Judgment Motion, but fails to note that step two requires district courts to make factual findings if exhaustion allegations conflict. (*See* D.E. 102 at 5.)

4

to be true, the court then proceeds [to the second step] *to make specific findings in order to resolve the disputed factual issues related to exhaustion.*" *Id.* (emphasis added).

Here, the Parties' allegations clash. Plaintiff advances affidavit testimony that on February 5, 2013 he submitted two formal grievances—one alleging deliberate indifference by four correctional officers[3] and a separate grievance alleging the same against the two medical Defendants, Mathurin and Smythe—and that on February 28, 2013 he filed two appeal grievances (which mirrored the two initial grievances) to the Office of the Department of Corrections Grievance Appeals. (*See* D.E. 102 at 20, ¶¶ 11–12.) Plaintiff asserts that in both instances, he received a receipt from the Department of Corrections concerning the correctional officers grievances, but did not receive receipts regarding the alleged medical Defendants grievances. *Id.* Aside from affidavit testimony, Plaintiff does not provide the Court any documentary evidence.

Defendants submit rebutting affidavit testimony by Alan McManus, the Chief of Policy Management and Inmate Appeals for the Florida Department of Corrections. McManus is the "custodian of the database that catalogues all formal grievances and grievance appeals for the FDOC." (D.E. 80-3 at ¶¶ 2, 5.) McManus testifies his "search of records contained in the grievance and grievance appeal database between July 1, 2012, [and] December 31, 2013" reveals that Plaintiff "did not file a grievance concerning inadequate medical treatment by medical providers on January 8, 2013, which he appealed to the Secretary." *Id.* at ¶ 16.

Because the Parties' exhaustion allegations conflict, and the Plaintiff's allegations taken as true do not require dismissal, the Magistrate Judge was compelled under *Turner* to proceed to the second step to "'make specific findings' and 'decide[] whether under those findings the [Plaintiff]

---

[3] The four correctional officer defendants, Efrain Collado, Frederick Lester, Bruny Pierre, and Angela Valentine, were voluntarily dismissed from the case in May 2016, and are not subject to this Order. (*See* D.E. 75.)

5

ha[d]' procedurally defaulted." (D.E. 137 at 21–22 (citing *Turner*, 541 F.3d at 1082–83; *Bryant*, 530 F.3d at 1376).) Therefore, the Court OVERRULES Plaintiff's objection that his affidavit "must be taken by law as true." (D.E. 141 at 1.)[4]

***Second***, Plaintiff objects to the Magistrate Judge's factual finding under *Turner* that Plaintiff did not formally grieve Defendants' alleged conduct. Specifically, Plaintiff attacks the McManus declaration on the grounds that McManus was in no position to know if Plaintiff's grievance was "thrown away shre[d]ded or otherwise disposed of" because McManus "does not collect grievances at the institution so his affidavit does nothing but state there are no grievances about the nurses in the data base which is because they never made it that far." (D.E. 141 at 2.)[5]

As discussed above—and without supporting documentary evidence—Plaintiff presents affidavit testimony that he filed a formal grievance and appeal grievance alleging deliberate indifference by Defendants. (*See* D.E. 102 at 20, ¶¶ 11–12.) Upon this testimony, Plaintiff asks the Court to overrule the Report and Recommendation. Defendants, however, present rebutting testimonial and documentary evidence showing Plaintiff did not grieve the January 8, 2013 incident as to the Defendants' conduct. McManus testifies his "search of records contained in the grievance and grievance appeal database between July 1, 2012, [and] December 31, 2013" shows

---

[4] Plaintiff also argues the Magistrate Judge "failed to take into account or even mention[ Plaintiff's] under penalty of perjury sworn affidavit." (D.E. 141 at 2.) The Court disagrees. In addressing the Defendants' exhaustion defense, the Magistrate Judge specifically cited paragraph 11 of Plaintiff's September 2016 affidavit, which sets forth testimony regarding the alleged grievance filed against Defendants. (D.E. 137 at 19–20.) The Magistrate Judge also cited several paragraphs of Plaintiff's opposition to summary judgment, which set forth Plaintiff's theory concerning the alleged grievances, which are in turn supported by Plaintiff's affidavit. *Id.* Nevertheless, *Turner* required the Magistrate Judge to make factual findings.

[5] This objection renews Plaintiff's argument in opposition to summary judgment that he filed two grievances concerning Defendants, but that both were unexplainably disposed of before being logged into the Department of Corrections's database. (*See* D.E. 102 at 4 ("[I]f an institutional administrator decides they do not want a particular grievance to leave the institution then that grievance will not leave the institution.").)

Plaintiff "did not file a grievance concerning inadequate medical treatment by medical providers on January 8, 2013, which he appealed to the Secretary." (D.E. 80–3 at ¶ 16.) McManus also attaches to his declaration documentary evidence comprising copies of the grievance and appeal grievance Plaintiff filed against the correctional officers. *See id.* at 8–11. These forms do not reference Defendants at all, which, notably, is consistent with Plaintiff's testimony that he "submitted two formal grievances" and "[t]he second grievance was about the nurses." (D.E. 102 at 20, ¶¶ 11–12.) So, Plaintiff's objection to the Magistrate Judge's factual finding boils down to his conclusory assertion that "the only way the grievance about Nurses Smythe and Mathurin could reach the data base would be if the officials at Dade C.I. file them which they did not which is beyond [Plaintiff's] control." (D.E. 141 at 2.)

On this evidentiary record, the Court agrees with the Magistrate Judge's factual finding that Plaintiff did not file any grievance concerning the Defendants' alleged conduct. The Court also agrees with the Magistrate Judge that it is "not plausible" that on February 5, 2013 Plaintiff filed a grievance against the correctional officers and a separate grievance against Defendants, but that only the correctional officers grievance was logged into the database, while the grievance against Defendants was inexplicably discarded without being logged into the database—and that this same result occurred *again* to Plaintiff's mirroring appeal grievances. *Id.*

Plaintiff suggested at summary judgment that Dade Correctional officials had a motive to eliminate the allegedly filed grievance against Defendants. (D.E. 102 at 4 ("The Officials at Dade C.I. knew that the Plaintiff [planned] to sue over the events of January 8, 2013.").) But neither Plaintiff's opposition to summary judgment nor his objections to the Report and Recommendation attempt to explain why officials would have a motive to prevent a lawsuit by discarding the grievances concerning the Defendants, while at the same time logging the grievances against the

7

corrections officers, thereby forging a path to litigation over the same incident. Moreover, Plaintiff readily admits he "[cannot] state what happened to the institutional grievance and Central Office appeal about the conduct of the Nurses." *Id.* Instead, in a conclusory statement, Plaintiff asserts "he did file them in accordance" with Florida law. *Id.* As discussed *infra*, conclusory assertions do not stand up to demonstrable evidence.

Now, the Court must determine whether, under this factual finding, the Plaintiff "exhausted his available administrative remedies." *Turner*, 541 F.3d at 1083. The grievance process applicable to Florida prisoners is set out in Section 33-103 of the Florida Administrative Code. Under this process, a prisoner "must: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the [Florida Department of Corrections ("FDOC")]." *Bracero v. Sec'y, Fla. Dep't of Corr.*, 748 F. App'x 200 (11th Cir. 2018) (citing *Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015); Fla. Admin. Code §§ 33-103.005–33-103.007). "These steps must be completed in order and within certain time frames." *Id.* (citing § 33-103.011(4)). Where, as here, Defendants present credible testimonial and supporting documentary evidence that rebut Plaintiff's conclusory assertions concerning exhaustion, the Court finds Defendants satisfy their burden of showing Plaintiff failed to exhaust the administrative remedies provided to him under Florida law,[6] as required by the Prison Litigation Reform Act. *Turner*, 541 F.3d at 1082.

The weight of authority in the Eleventh Circuit confirms this result. *See, e.g., Williams v. Dep't of Corr.*, 678 F. App'x 877, 881–83 (11th Cir. 2017) (affirming dismissal where "Florida Department of Corrections' grievance log confirm[ed] that [plaintiff] did not submit any grievance

---

[6] While "[a] prisoner may proceed to the next step in the process without receiving a response when the prison's time to respond has expired," *Bracero*, 748 F. App'x 200 (citing § 33-103.011(4)), here, the factual finding that Plaintiff did not formally grieve the Defendants' alleged conduct necessarily means the prison did not fail to timely respond.

appeals" about the defendants based on Bureau of Inmate Grievance Appeals employee testimony that plaintiff "filed no appeals" during relevant time period, and where only appeal filed "had nothing to do with any of the issues underlying any of [plaintiff's] § 1983 claims"); *Bracero*, 748 F. App'x 200 (affirming dismissal and rejecting plaintiff's "claims that the prison's lack of response to certain grievances prevented him from going forward with the three-step process" because "[t]he grievance procedure permitted [plaintiff] to correct and refile the grievances"); *Gipson v. Renninger*, No. 17-14364, 2018 WL 5734582, at *4–5 (11th Cir. Nov. 1, 2018) ("The district court properly concluded that [plaintiff] did not submit evidence showing that he filed any other proper administrative grievances relating to the incident on May 29, 2015" and thus "the district court correctly concluded that he failed to exhaust them"); *see also Lyons v. Trinity Servs. Grp., Inc.*, 401 F. Supp. 2d 1290, 1295–98 (S.D. Fla. 2005) (dismissing complaint on exhaustion grounds where records custodian in an affidavit "certif[ied] that there [was] no record of any appeals to the Department of Corrections having been filed by [Plaintiff] during that period of time" and "[a]side from his own conclusory statements, Plaintiff . . . produced no evidence whatsoever to support his claim that he has exhausted administrative remedies").

Finally, Plaintiff also argues in his objections that *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001) and *Powe v. Ennis*, 177 F.3d 393 (5th Cir. 1999) support his exhaustion arguments. The Court disagrees. Not only are these two out-of-circuit cases not binding on this Court; they do not support Plaintiff's position. In *Foulk*, the defendant correctional officer "established" the prisoner filed an "informal resolution request." *Foulk*, 262 F.3d at 698. The problem for the defendant was that he *also* established the Department of Corrections "failed to respond" to the prisoner's informal resolution request. *Id.* So, the Eighth Circuit reversed the district court's dismissal on exhaustion grounds because the defendant correctional officer "point[ed] to no

evidence in the trial record which establishe[d] that [the prisoner] could indeed have filed a grievance despite [the Missouri Department of Corrections's] failure to respond to his [informal resolution request]." *Id.* Then, in *Powe*, the prisoner presented evidence that he satisfied the "step 1 and step 2 grievances" and that the government failed to timely respond to his "step 2 grievance." *Powe*, 177 F.3d at 394. The Fifth Circuit reversed the district court's dismissal on exhaustion grounds, ruling the prisoner had exhausted his administrative remedies because the "state's time for responding . . . expired." *Id.*

Here—in contrast to *Foulk* and *Powe* where evidence established the prisoners completed initial administrative remedy procedures, but were stymied from completing the process because the government failed to respond—the evidentiary record does not establish Plaintiff successfully completed the first step of Florida Department of Corrections administrative remedy procedures (*i.e.* filing a formal grievance against Defendants). *See* § 33-103.005(1) ("Inmates may skip [an informal grievance] and initiate the process at the formal institutional level for issues pertaining to . . . medical grievance[s] . . . .") (effective Nov. 7, 2012). Instead, the testimonial and documentary evidence shows Plaintiff did not grieve the January 8, 2013 incident as to Defendants' conduct. Plaintiff's second objection is consequently OVERRULED.

***Third***, Plaintiff "specifically object[s]" as a "mistake of law" to the Magistrate Judge's finding that Plaintiff "provide[d] no copies of the grievances he purportedly filed against Mathurin and Smythe, and the documents provided by Defendants prove[d] otherwise." (D.E. 141 at 2 (citing § 33-103.015(8)).) Plaintiff argues the Florida Department of Corrections "has an express policy against making copies of DCI-303 forms which are grievance forms." *Id.* Now, Section 33-103.015(8) did indeed provide "that copying services shall not be provided to make copies of . . . Form DC1-303." § 33-103.015(8) (effective Nov. 7, 2012). But notwithstanding, Florida

law and the required grievance forms make clear that Plaintiff was allowed to—and expected to—retain copies of his grievance forms in order to pursue his administrative remedies. For example, Section 33-103.006(1) explicitly required Plaintiff to file his formal grievance against Defendants "by completing Form DC1-303." § 33-103.006(1) (effective Nov. 7, 2012). And the Form DC1-303 Plaintiff filed against the correctional officers[7]—which was filed the same day Plaintiff alleges he grieved the incident as to the Defendants—explicitly provided that Plaintiff was to receive "2 Copies." (*See* D.E. 80-3 at 11.) This Form DC1-303 also provided for additional distribution of copies to Plaintiff's "inmate file," the "institutional grievance file," and throughout the Central Office. *Id.* Furthermore, for Plaintiff's alleged appeal grievance, Sections §§ 33-103.007(5)(a)–(c) required that he "[a]ttach a copy of his formal [or informal] grievance and response" or "[a]ttach any other documentation" Plaintiff had that was "pertinent to the review." §§ 33-103.007(5)(a)–(c) (effective Nov. 7, 2012). Thus, it is clear that Florida law expected Plaintiff to retain copies of filed grievances throughout his administrative remedy process.

Tethering together these statutory expectations with the evidentiary record showing Plaintiff did not formally grieve Defendants' alleged conduct, the Court finds the Magistrate Judge correctly applied *Turner* to make factual findings regarding exhaustion and did not err in recommending dismissal in part because Plaintiff "provide[d] no copies of the[] purported grievances, despite being given an opportunity to do so." Therefore, Plaintiff's final objection is also OVERRULED.[8]

---

[7] The DC1-303 Form effective May 31, 2012 is accessible on the Florida Administrative Code and Florida Administrative Register at https://www.flrules.org/Gateway/reference.asp?No=Ref-01223. A blank version of the applicable DC1-303 Form is also attached to this Order as **Exhibit 1**.

[8] Plaintiff also relies on the Fifth Circuit's ruling in *Underwood v. Wilson* to argue that "[d]ismissal under § 1997e is made on pleadings without proof" and so "[a]s long as the plaintiff has alleged exhaustion with sufficient specificity, lack of admissible evidence in the record does not form the basis for dismissal." *See* 151 F.3d 292, 296 (5th Cir. 1998). Once again Plaintiff

11

Before concluding, the Court notes that the Magistrate Judge proceeded to address Defendants' summary judgment arguments on the merits. At this point, however, the Court need not reach the Magistrate Judge's analysis regarding summary judgment "[b]ecause [Plaintiff] did not exhaust administrative remedies as required by 42 U.S.C. § 1997e(a), and this fact alone is sufficient reason to dismiss the action." *See Roach v. SCI Graterford Med. Dep't*, 178 F. App'x 181, 183 (3d Cir. 2006).[9]

## IV. CONCLUSION

For the foregoing reasons, it is

**ADJUDGED** as follows:

(1) Because Plaintiff failed to exhaust his administrative remedies concerning Defendants' alleged conduct, as required by the Prison Litigation Reform Act, the Report and Recommendation is **AFFIRMED**;

(2) Defendants Esther Mathurin's and Cephianne Smythe's Motion for Summary Judgment, construed as a motion to dismiss for lack of exhaustion of administrative remedies, is **GRANTED**;

(3) Plaintiff's claims against Defendants Esther Mathurin and Cephianne Smythe are accordingly **DISMISSED WITHOUT PREJUDICE**; and

(4) No certificate of appealability shall issue.

---

relies on non-binding out-of-circuit case law. But this time, Plaintiff also relies on outdated case law. *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (ruling that after the Supreme Court's rulings in *Woodford v. Ngo*, 548 U.S. 81 (2006) and *Jones v. Bock*, 549 U.S. 199 (2007), "there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. We thus hold that *Underwood* has been *tacitly overruled and is no longer good law* to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion.") (emphasis added).

[9] The Court need not reach Defendants' objections because they were limited to the Magistrate Judge's summary judgment analysis. (D.E. 139.)

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th of March 2019.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Magistrate Judge Lisette Marie Reid[10]

Counsel of Record

Lizette Whitaker[11]
2317 Evermore Way, #202
Wilmington, NC 28403-4840
*as next-of-kin to:*

Harry A. Nail
W03328
Madison Correctional Institution
Inmate Mail/Parcels
382 SW MCI Way
Madison, FL 32340
Pro Se

---

[10] The case was reassigned on January 3, 2019 from Magistrate Judge Patrick A. White to Magistrate Judge Lisette Marie Reid. (D.E. 138, 140.)

[11] On February 21, 2019, Defendants filed a Suggestion of Death as to Plaintiff. (D.E. 146.) Magistrate Judge Reid issued a paperless order the same day requiring that Defendants properly serve the Suggestion of Death on Plaintiff's next-of-kin. (D.E. 147.) On February 28, 2019, Defendants filed an Amended Suggestion of Death as to Plaintiff, which reflected that the Suggestion of Death has been served on Plaintiff's next-of-kin, his mother Lizette Whitaker. (D.E. 148.) For these reasons, the Court will furnish a copy of this Order to Lizette Whitaker.